**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HARRIS CORPORATION,**
**a Delaware Corporation,**

     **Plaintiff,**

**v.**                                                **CASE NO.:  6:11-cv-182-ORL-28GJK**

**TELEDYNE TECHNOLOGIES, INC.,**
**a Delaware Corporation,**

     **Defendant.**

_____

**TELEDYNE TECHNOLOGIES INCORPORATED'S ANSWER AND DEMAND FOR**
**JURY TRIAL**

The Defendant, Teledyne Technologies Incorporated (hereinafter, "Teledyne"), hereby

responds to Plaintiff Harris Corporation's Complaint filed February 3, 2011 as follows:

**PARTIES, JURISDICTION AND VENUE**

1.     Admitted.

2.     Admitted.

3.     Teledyne admits that the Complaint purports to state a cause of action arising

under the patent laws of the United States and that this Court has jurisdiction over the subject

matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Teledyne, however, denies the

merits of the claims asserted against it and, except as expressly admitted herein, denies any

remaining allegations in Paragraph 3.

4.     Teledyne admits that it is subject to personal jurisdiction in this state and that it

conducts business in this state.  Except as expressly admitted herein, Teledyne denies any

remaining allegations in Paragraph 4.

5.     Teledyne admits that venue is proper but denies that this venue is convenient or in the interest of justice.

## STATEMENTS OF FACT

6.     Teledyne admits that Harris claims to be the sole and exclusive owner of all rights, title and interest to U.S. Patent Nos. 6,047,165; 6,308,045; RE40,479; 6,990,319; 7,426,387; 7,426,388 and 7,428,412 (the "Patents-in-Suit").  Teledyne further admits that copies of those patents were attached to the complaint as Exhibits A-G, respectively.  Teledyne, however, lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 6 with respect to the actual ownership of the Patents-in-Suit and therefore denies those allegations and any remaining allegations of Paragraph 6 not expressly admitted herein.

7.     Denied.

8.     Denied.

## COUNT I

### (Infringement of U.S. Patent No. 6,047,165)

9.     Teledyne incorporates its responses to the allegations of Paragraphs 1 through 8 set forth above as if fully set forth herein.

10.     Teledyne admits that U.S. Patent No. 6,047,165 (the "'165 patent") issued to Harris on April 4, 2000 and that a copy of the '165 patent was attached to the Complaint as Exhibit A.  Teledyne further admits that Harris claims to be the sole and exclusive owner of all rights, title and interest to the '165 patent.  Teledyne, however, lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 10 with respect to

the actual ownership of the '165 patent and therefore denies those allegations and any remaining allegations of Paragraph 10 not expressly admitted herein.

11.     Denied.

12.     Denied.

13.     Denied.

## COUNT II

## (Infringement of U.S. Patent No. 6,308,045)

14.     Teledyne incorporates its responses to the allegations of Paragraphs 1 through 13 set forth above as if fully set forth herein.

15.     Teledyne admits that U.S. Patent No. 6,308,045 (the "'045 patent") issued to Harris on October 23, 2001 and that a copy of the '045 patent was attached to the Complaint as Exhibit B.  Teledyne further admits that Harris claims to be the sole and exclusive owner of all rights, title and interest to the '045 patent.  Teledyne, however, lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 15 with respect to the actual ownership of the '045 patent and therefore denies those allegations and any remaining allegations of Paragraph 15 not expressly admitted herein.

16.     Denied.

17.     Denied.

18.     Denied.

## COUNT III

## (Infringement of U.S. Patent No. RE40,479)

19.     Teledyne incorporates its responses to the allegations of Paragraphs 1 through 18 set forth above as if fully set forth herein.

20.     Teledyne admits that U.S. Patent No. RE40,479 (the "'479 patent") issued to Harris on September 2, 2008 and that a copy of the '479 patent was attached to the Complaint as Exhibit C.  Teledyne further admits that Harris claims to be the sole and exclusive owner of all rights, title and interest to the '479 patent.  Teledyne, however, lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 20 with respect to the actual ownership of the '479 patent and therefore denies those allegations and any remaining allegations of Paragraph 20 not expressly admitted herein.

21.     Denied.

22.     Denied.

23.     Denied.

## COUNT IV

## (Infringement of U.S. Patent No. 6,990,319)

24.     Teledyne incorporates its responses to the allegations of Paragraphs 1 through 23 set forth above as if fully set forth herein.

25.     Teledyne admits that U.S. Patent No. 6,990,319 (the "'319 patent") issued to Harris on January 24, 2006 and that a copy of the '319 patent was attached to the Complaint as Exhibit D.  Teledyne further admits that Harris claims to be the sole and exclusive owner of all rights, title and interest to the '319 patent.  Teledyne, however, lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 25 with respect to the actual ownership of the '319 patent and therefore denies those allegations and any remaining allegations of Paragraph 25 not expressly admitted herein.

26.     Denied.

27.     Denied.

28.     Denied.

## COUNT V

### (Infringement of U.S. Patent No. 7,426,387)

29.     Teledyne incorporates its responses to the allegations of Paragraphs 1 through 28 set forth above as if fully set forth herein.

30.     Teledyne admits that U.S. Patent No. 7,426,387 (the "'387 patent") issued to Harris on September 16, 2008 and that a copy of the '387 patent was attached to the Complaint as Exhibit E.  Teledyne further admits that Harris claims to be the sole and exclusive owner of all rights, title and interest to the '387 patent.  Teledyne, however, lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 30 with respect to the actual ownership of the '387 patent and therefore denies those allegations and any remaining allegations of Paragraph 30 not expressly admitted herein.

31.     Denied.

32.     Denied.

33.     Denied.

## COUNT VI

### (Infringement of U.S. Patent No. 7,426,388)

34.     Teledyne incorporates its responses to the allegations of Paragraphs 1 through 33 set forth above as if fully set forth herein.

35.     Teledyne admits that U.S. Patent No. 7,426,388 (the "'388 patent") issued to Harris on September 16, 2008 and that a copy of the '388 patent was attached to the Complaint as Exhibit F.  Teledyne further admits that Harris claims to be the sole and exclusive owner of all rights, title and interest to the '388 patent.  Teledyne, however, lacks knowledge or information

sufficient to form a belief regarding the truth of the allegations in Paragraph 35 with respect to the actual ownership of the '388 patent and therefore denies those allegations and any remaining allegations of Paragraph 35 not expressly admitted herein.

36.     Denied.

37.     Denied.

38.     Denied.

## COUNT VII

## (Infringement of U.S. Patent No. 7,428,412)

39.     Teledyne incorporates its responses to the allegations of Paragraphs 1 through 38 set forth above as if fully set forth herein.

40.     Teledyne admits that U.S. Patent No. 7,428,412 (the "'412 patent") issued to Harris on September 23, 2008 and that a copy of the '412 patent was attached to the Complaint as Exhibit G.  Teledyne further admits that Harris claims to be the sole and exclusive owner of all rights, title and interest to the '412 patent.  Teledyne, however, lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 40 with respect to the actual ownership of the '412 patent and therefore denies those allegations and any remaining allegations of Paragraph 40 not expressly admitted herein.

41.     Denied.

42.     Denied.

43.     Denied.

## RESPONSE TO HARRIS' PRAYER FOR RELIEF

44.     Teledyne states that Harris' Prayer for Relief does not require a response.

45.     Teledyne denies that Harris is entitled to any relief whatsoever from Teledyne, as prayed for or otherwise.

46.     Teledyne denies each and every allegation of the Complaint not already admitted or denied and further denies that Harris is entitled to any relief whatsoever from Teledyne on the basis of any of the purported claims for relief contained in the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

47.     Teledyne asserts the following affirmative defenses and reserves the right to raise additional defenses if and when appropriate. In asserting these defenses, Teledyne does not assume the burden of proof for any issue with respect to which applicable law places the burden of proof upon Plaintiff.

## FIRST AFFIRMATIVE DEFENSE

### (Invalidity of the Asserted Patents)

48.     Each purported claim of the Patents-in-Suit is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

## SECOND AFFIRMATIVE DEFENSE

### (Noninfringement of the Asserted Patents)

49.     Teledyne has not and does not infringe, contribute to the infringement of, or actively induce others to infringe any valid, enforceable claim of any of the Patents-in-Suit, either literally, or under the doctrine of equivalents.

## THIRD AFFIRMATIVE DEFENSE

### (Issue Preclusion)

50.     Harris is precluded from re-litigating any issue on which there was a finding adverse to it in any prior litigation.

## FOURTH AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

51.     Harris is estopped, based on statements, representations, and admissions made during prosecution of the patent applications resulting in the Patents-in-Suit, from asserting any interpretation of any valid, enforceable claims of the Patents-in-Suit that would be broad enough to cover any of Teledyne's products alleged to infringe the Patents-in-Suit, either literally or by application of the doctrine of equivalents.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Mark)

52.     On information and belief, Harris' purported claims for relief concerning the Patents-in-Suit are limited by failure to comply with the marking and notice requirements of 35 U.S.C. § 287(a).

## SIXTH AFFIRMATIVE DEFENSE

### (Laches and/or Estoppel)

53.     Harris' claim for damages for past patent infringement against Teledyne is limited under the doctrines of laches and/or estoppel and its claim for damages and equitable relief post filing of the complaint is barred by equitable estoppel, in part because Harris first notified Teledyne in 2001 that it thought Teledyne needed a license under its patent portfolio and Harris and Teledyne acknowledged in April 2003 and May 2003 that the parties could not reach

agreement without Court intervention.  Harris waited nearly seven years after that acknowledgment before filing this action.

## EIGHTH AFFIRMATIVE DEFENSE

### (Limitation on Damages)

54.     Harris' recovery for alleged infringement of the Patents-in-Suit, if any, is limited to  any alleged infringement committed no more than six years prior to the filing of its Complaint, pursuant to 35 U.S.C. § 286.

## NINTH AFFIRMATIVE DEFENSE

### (Prosecution Laches)

55.     Harris is barred by the doctrine of prosecution laches from enforcing the '387, '388 and '412 patents against Teledyne because of Teledyne's intervening rights arising during Harris' more than 10 year delay in filing the applications which led to those patents.

## TENTH AFFIRMATIVE DEFENSE

### (Double Patenting)

56.     At least the '479 patent is invalid under the judicially created doctrine of obviousness-type double patenting.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Violation of Reasonable and Non-Discriminatory Licensing Agreement)

57.     On information and belief, Harris committed to the licensing of some or all of the Patents-in-Suit on Reasonable and Nondiscriminatory (RAND) terms. Accordingly Harris' damages are limited by that agreement.

## TWELFTH AFFIRMATIVE DEFENSE

### (Inequitable Conduct)

58.     The '165 patent and the patents claiming priority to it are unenforceable due to inequitable conduct that occurred during the reexamination of the '165 patent.

59.     During the '165 patent reexamination Harris intentionally withheld material prior art from the PTO, which would have led the PTO to reject the claims under reexamination. Harris did so with the intent to induce and to mislead the PTO into confirming those claims it would have otherwise rejected.  Harris' inequitable conduct is established by at least the following facts:

 The '647 Application:

60.     On October 11, 2001, Harris, through its patent attorney, Richard K. Warther, filed U.S Patent Application 09/976,647 (the "'647 application") as a third generation continuation of the '165 patent.  The '647 application was amended to include a number of claims, including the following:

> 59. An aircraft data transmission system, the aircraft having a data
> acquisition unit, comprising:
>
> a communications unit located in the aircraft and in communication
> with the data acquisition unit;
>
> a cellular infrastructure in communication with said communications
> unit after the aircraft has landed, wherein the communication is
> initiated automatically upon landing of the aircraft;
>
> a data reception unit in communication with said cellular information.

61.     The claims of the '647 application were rejected several times over various combinations of prior art and on April 10, 2007, Examiner Donnie Crosland issued a third Final rejection in which he rejected all of the independent claims and certain dependant claims under 35 U.S.C. 103(a) as being unpatentable over U.S. Patent No. 5,351,194 to Ross, et al. ("Ross") in

view of U.S. Patent No. 4,729,102 to Miller, et al. ("Miller").  Examiner Crosland also rejected

the claims under  35 U.S.C. 112, ¶ 1, for failing to comply with the written description

requirement.  On November 5, 2007, Harris appealed this Final rejection to the Board of Patent

Appeals and Interferences (BPAI) and on January 15, 2009, the BPAI affirmed the examiner's

rejections of all claims of the '647 application, holding, in part:

> applying modern prior art automatic wireless transmission
> techniques to transfer promptly the required primary five
> regulatory data as Miller suggests, upon landing as Ross, Miller,
> and admitted prior art systems suggest, would have been obvious.
> Such a combination satisfies regulatory requirements and gains
> short and long term cost, maintenance, and safety advantages,
> thereby remedying known prior art problems, including manual or
> other line of sight retrieval problems. (FF 11-19). According to
> *KSR*, and *Leapfrog*, the combination amounts to the predictable
> combination or substitution of a prior art techniques.

BPAI Opinion at 13-14.  Harris filed a notice of Appeal with the Federal Circuit seeking to

overturn this decision but then abandoned the appeal after having concealed the BPAI decision

as detailed below.

<u>The '319 Patent</u>

On February 7, 2003 Harris, through its patent attorney Richard K. Warther, filed U.S.

Patent Application 10/360,447 as a continuation of the '647 application; in a preliminary

amendment Harris added new claims, including a group of claims modeled after the claims in

earlier Harris patents, including the '165 parent.  On May 21, 2004 Examiner Crosland rejected

the remaining claims under 35 U.S.C. 103(a) as being unpatentable over U.S. Patent 5,445,347 to

Ng ("Ng") in view of Ross.  Harris amended its claims but, on April 27, 2005, Examiner

Crosland rejected them a third time based on the same two references.  Harris responded by

making significant additional amendments to the claims, after which they were allowed in what

became the '319 patent.   As detailed below Harris intentionally concealed the Ross reference and the rejections based on the Ross reference in a later prosecution.

<u>'165 Patent Reexamination</u>

62.   On March 30, 2007, Federal Express filed a request for the *ex parte* reexamination of the '165 patent, citing various prior art references, including Miller, but not including Ross.  That request was granted on June 29, 2007.

63.   During the prosecution of the *ex parte* reexamination of the '165 patent Harris intentionally withheld Ross, the rejections in the '319 patent application that relied on Ross and the BPAI opinion in the '647 application that also relied on Ross, from the examiner of the '165 reexamination, in order to induce the examiner to confirm claims similar to those rejected by a different examiner and by the BPAI.

64.   On December 19, 2007, the examiner for the '165 patent reexamination, Charles R. Craver, from the PTO Central Reexamination Unit, who had not been involved with any of the other Harris patents, nor the BPAI appeal, issued a Non-Final Office Action rejecting all of the claims subject to reexamination as obvious over U.S. Patent No. 5,761,625 to Honcik, et al. in view of Ng.  In this same Office Action the examiner reminded the Patent Owner, Harris, of its "continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any . . . other prior or concurrent proceeding, involving Patent No. 6,047,165 throughout the course of this reexamination proceeding."  On February 18, 2008, Harris, through its patent attorney Richard Warther, responded to the Office Action concealing: the fact that, just three months earlier, it was forced to appeal the final rejection of the claims in the related '647 application; the Ross reference which was relied on for that rejection; and that similar claims had been rejected twice by Examiner Crosland as unpatentable over Ng, which Examiner Craver had before him, in view

of Ross, which he did not.  Harris also failed to subsequently disclose the BPAI's decision

affirming the rejection of the '647 application, which issued months before Examiner Craver

issued his Notice of Intent to Issue a Reexamination Certificate on the parent '165 patent.

> The Ross Reference and the Earlier Rejection in the '319 Patent Application and the
> BPAI decision that Relied on Ross were Material

65.    The Ross reference was material, as was the fact that Examiner Crosland had

relied on it in combination with Ng to reject similar claims in the application that issued as the

'319 patent; and the fact that Examiner Crosland and the BPAI had relied on it in combination

with Miller to reject similar claims in the '647 application.  Had Examiner Craver been provided

the Ross reference while considering the claims in the '165 reexamination, he more likely than

not would have rejected those claims.  Had Examiner Craver also been informed that Examiner

Crosland had rejected the very similar claims in the '319 patent application by combining Ross

with Ng, which he was already considering, it is even more likely that he would have rejected the

'165 claims.  Had Examiner Craver been further informed that the BPAI had relied on Ross and

Miller to affirm the rejection of the claims in the '647 application, it is even more likely that he

would have rejected as opposed to confirm the claims under reexamination.

66.    A comparison of the claims rejected by Examiner Crosland, who was aware of

Ross, and those confirmed by Examiner Craver, who was not, establishes the materiality of Ross.

Claim 59, with amendments shown, is representative of the claims that were rejected by

Examiner Crosland in the '319 patent application.  Claim 17 of the '165 patent is representative

of the claims confirmed during the '165 patent reexamination.  The correspondence of the

features of these claims is illustrated below:

| Claim Rejected in '319 Patent Application | Claim Confirmed in '165 patent Reexamination |
|---|---|
| 59. (CURRENTLY AMENDED) A method of providing data from an aircraft comprising: | 17. A method of providing a retrievable record of the flight performance of an aircraft comprising the steps of: |
| generating data pertaining to the aircraft during an entire flight of the aircraft; | acquiring flight performance data of an aircraft during flight of the aircraft; |
| accumulating the generated aircraft data within a ground data link unit positioned within the aircraft during the entire flight of the aircraft; | accumulating and storing within an archival memory of a ground data link unit the flight performance data during flight of the aircraft; |
| while the aircraft is on the ground, after the aircraft completes its flight and lands at an airport, transmitting the accumulated, generated aircraft data from the ground data link unit over a wideband spread spectrum communications signal to a ground based spread spectrum receiver; and | after the aircraft lands at an airport at completion of the flight, downloading the flight performance data that has been accumulated and stored within the archival data store during the flight over a wideband spread spectrum communication signal to an airport based spread spectrum receiver; |
| demodulating the received spread spectrum communications signal to obtain the accumulated, generated aircraft data. | demodulating the received spread spectrum signal to obtain the flight performance data; |
| | storing the demodulated flight performance data within an airport based archival data storage; and |
| | retrieving the flight performance data via an airport based processor for further processing. |

Harris and its Attorney Intended to Deceive the PTO

67.     The facts demonstrate by clear and convincing evidence that Harris and its patent

attorney intended to deceive the PTO.  Richard Warther knew of the Ross reference; knew of the

arguments by Examiner Crosland and the BPAI decision that relied on it; and knew if he

disclosed the Ross reference and the BPAI decision Harris would lose the claims under

reexamination as they had lost similar claims in the BPAI decision.  Richard Warther also knew about the claims that had been rejected in the '319 patent application; that those claims were very similar to those under reexamination; and, for the reasons discussed above, that Examiner Craver in the reexamination would have rejected the '165 patent claims had he been aware of the Ross reference and the prior, but withheld, decisions of the PTO that relied on it.

68.     On November 16, 2007, Harris filed a complaint for patent infringement against Federal Express asserting the '165 patent and other related Harris patents.  Harris was represented in that lawsuit by the same law firm in which its patent prosecution attorney Richard Warther was a shareholder.  Federal Express answered the complaint on February 1, 2008, denying infringement and asserting a counterclaim that the patents-in-suit, including the '165 patent, were invalid.  Two and a half weeks later, Harris made its first submission in the '165 patent reexamination proceedings.  In its February 18, 2008 response to a non-final rejection, Harris argued for the validity of its claims, but did not disclose to Examiner Craver either Ross or the prior arguments made by Examiner Crosland that relied on Ross to reject almost identical claims in the '319 patent application.  Neither did Harris disclose the January 15, 2009 BPAI decision, which issued just as Harris was seeking leave to amend its complaint to add the '387 and '412 patents to the Federal Express case, but over two months before Examiner Craver issued his Notice of Intent to Issue a Reexamination Certificate in the '165 Reexamination.

69.     Both Harris and Warther understood that an adverse outcome in the reexamination would undermine the pending Federal Express litigation.  Specifically, both Harris and Richard Warther knew that it was critically important that the claims of the '165 patent be confirmed without amendment to avoid intervening rights.  To obtain that result, both Harris and Richard Warther intentionally misled the examiner by intentionally withholding prior

art and prior rejections, including the BPAI decision, that relied on that art and other art of

record.  The only reasonable inference to be drawn from all of these facts is that Harris and its

attorney Richard Warther knew that Examiner Craver would reject the '165 patent claims if he

was presented with Ross and the prior arguments relying on it, so they decided to withhold this

information from Examiner Craver with the intent to deceive the Patent Office into confirming

the claims under reexamination.

70.     This inequitable conduct with respect to the '165 patent renders the '165 patent

and all of the patents claiming priority to it unenforceable.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Patent Misuse)

71.     Harris' purported claims against Teledyne are barred by the doctrine of patent

misuse based on the facts set forth in Paragraphs 58 - 70, *supra*, which are incorporated herein

by this reference as if fully stated herein.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

72.     Harris' purported claims against Teledyne are barred by the doctrine of unclean

hands based on the facts set forth in Paragraphs 58 - 70, *supra*, which are incorporated herein by

this reference as if fully stated herein.

73.     Teledyne incorporates and realleges Paragraph 57, as though set forth in full

herein, related to Teledyne's claim of Harris' violation of its RAND agreement.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (No Right to Injunctive Relief)

74.     Harris is not entitled to injunctive relief because any injury to it is not immediate or irreparable, any future relief is barred by equitable estoppel, and Harris has an adequate remedy at law for any claims it can prove since Harris does not compete with Teledyne in the sales of the alleged infringing products.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Limitation on Recover of Costs)

75.     Harris is precluded from seeking recovery of costs by 35 U.S.C. § 288.

///

///

## COUNTERCLAIMS OF TELEDYNE AGAINST HARRIS

The following are counterclaims for a declaratory judgment of non-infringement, invalidity, and/or unenforceability of each of the Patents-in-Suit (U.S. Patent Nos. 6,047,165; 6,308,045; RE40,479; 6,990,319; 426,387; 7,426,388 and 7,428,412).

## JURISDICTION AND VENUE

1.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a) and 2202.

3.      This Court has personal jurisdiction over Counter-defendant Harris because Harris submitted to the jurisdiction of this Court by filing its Complaint against Teledyne.

4.      Venue is proper in this judicial district because these claims are being brought as compulsory counterclaims pursuant to Fed. R. Civ. P. 13(a), and under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because the claims set forth herein involve federal questions of United States Patent Law.

5.      An immediate, real, and justiciable controversy exists between Teledyne and Harris as to whether United States Patent Nos. 6,047,165 (the "'165 patent"); 6,308,045 (the "'045 patent"); RE40,479 (the "'479 patent"); 6,990,319 (the "'319 patent"); 7,426,387 (the "'387 patent"); 7,426,388 (the "'388 patent") and 7,428,412 (the "'412 patent") are invalid, unenforceable and have not been infringed.

## NATURE OF THE ACTION

6.     This is an action for a declaratory judgment of patent invalidity, unenforceability and non-infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## THE PARTIES

7.     Counter-Claimant Teledyne is a Delaware corporation with a principal place of business at 1049 Camino Dos Rios, Thousand Oaks, California 91360.

8.     On information and belief, defendant Harris is a Delaware corporation with a principal place of business at 1025 West NASA Boulevard, Melbourne, Florida 32919.

## FIRST COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement and/or Invalidity of the '165 Patent)

9.     Teledyne restates and incorporates by reference each of the allegations of paragraphs 1 through 8 of this Counterclaim.

10.     On February 3, 2011, Harris filed a complaint against Teledyne, designated as Civil Action No. 6:11-cv-182-Orl-28GJK, alleging that Teledyne has utilized and continues to utilize systems or methods that infringe directly, by inducement and/or contributorily, one or more claims of the '165 patent.

11.     Each claim of the '165 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, and 132, and the rules, regulations, and laws pertaining thereto; and/or Teledyne has not infringed and is not now infringing any valid and enforceable claim of the '165 patent, either directly, contributorily or through inducement, literally or by equivalents, and, moreover, Teledyne, its customers, and all others have the right to manufacture, have made, use, sell, offer

to sell any Teledyne products and services accused of infringement, unhampered and unmolested by Harris.

12.     Teledyne is informed and believes, and on that basis alleges, that Harris denies each of the foregoing contentions.

13.     Based on Harris' filing of this suit and Teledyne's Affirmative Defenses, a true, actual, and justiciable controversy has arisen and now exists between Teledyne and Harris regarding the alleged infringement and validity of the '165 patent asserted by Harris against Teledyne.

14.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Teledyne requests the declaration of the Court that Teledyne does not infringe and has not infringed any valid, enforceable claim of the '165 patent and/or the '165 patent is invalid.

15.     Teledyne has no adequate remedy at law.

## SECOND COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement and/or Invalidity of the '045 Patent)

16.     Teledyne restates and incorporates by reference each of the allegations of paragraphs 1 through 8 of this Counterclaim.

17.     On February 3, 2011, Harris filed a complaint against Teledyne, designated as Civil Action No. 6:11-cv-182-Orl-28GJK, alleging that Teledyne has utilized and continues to utilize systems or methods that infringe directly, by inducement and/or contributorily, one or more claims of the '045 patent.

18.     Each claim of the '045 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, and 132, and the rules, regulations, and laws pertaining thereto; and/or Teledyne

has not infringed and is not now infringing any valid and enforceable claim of the '045 patent, either directly, contributorily or through inducement, literally or by equivalents, and, moreover, Teledyne, its customers, and all others have the right to manufacture, have made, use, sell, offer to sell any Teledyne products and services accused of infringement, unhampered and unmolested by Harris.

19.     Teledyne is informed and believes, and on that basis alleges, that Harris denies each of the foregoing contentions.

20.     Based on Harris' filing of this suit and Teledyne's Affirmative Defenses, a true, actual, and justiciable controversy has arisen and now exists between Teledyne and Harris regarding the alleged infringement and validity of the '045 patent asserted by Harris against Teledyne.

21.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Teledyne requests the declaration of the Court that Teledyne does not infringe and has not infringed any valid, enforceable claim of the '045 patent and/or the '045 patent is invalid.

22.     Teledyne has no adequate remedy at law.

## THIRD COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement and/or Invalidity of the '479 Patent)

23.     Teledyne restates and incorporates by reference each of the allegations of paragraphs 1 through 8 of this Counterclaim.

24.     On February 3, 2011, Harris filed a complaint against Teledyne, designated as Civil Action No. 6:11-cv-182-Orl-28GJK, alleging that Teledyne has utilized and continues to utilize systems or methods that infringe directly, by inducement and/or contributorily, one or more claims of the '479 patent.

25.     Each claim of the '479 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto; and/or Teledyne has not infringed and is not now infringing any valid and enforceable claim of the '479 patent, either directly, contributorily or through inducement, literally or by equivalents, and, moreover, Teledyne, its customers, and all others have the right to manufacture, have made, use, sell, offer to sell any Teledyne products and services accused of infringement, unhampered and unmolested by Harris.

26.     Teledyne is informed and believes, and on that basis alleges, that Harris denies each of the foregoing contentions.

27.     Based on Harris' filing of this suit and Teledyne's Affirmative Defenses, a true, actual, and justiciable controversy has arisen and now exists between Teledyne and Harris regarding the alleged infringement and validity of the '479 patent asserted by Harris against Teledyne.

28.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Teledyne requests the declaration of the Court that Teledyne does not infringe and has not infringed any valid, enforceable claim of the '479 patent and/or the '479 patent is invalid.

29.     Teledyne has no adequate remedy at law.

## FOURTH COUNTERCLAIM

## (Declaratory Judgment of Non-Infringement and/or Invalidity of the '319 Patent)

30.     Teledyne restates and incorporates by reference each of the allegations of paragraphs 1 through 8 of this Counterclaim.

31.     On February 3, 2011, Harris filed a complaint against Teledyne, designated as Civil Action No. 6:11-cv-182-Orl-28GJK, alleging that Teledyne has utilized and continues to utilize methods that infringe directly, by inducement and/or contributorily, one or more claims of the '319 patent.

32.     Each claim of the '319 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto; and/or Teledyne has not infringed and is not now infringing any valid and enforceable claim of the '319 patent, either directly, contributorily or through inducement, literally or by equivalents, and, moreover, Teledyne, its customers, and all others have the right to manufacture, have made, use, sell, offer to sell any Teledyne products and services accused of infringement, unhampered and unmolested by Harris.

33.     Teledyne is informed and believes, and on that basis alleges, that Harris denies each of the foregoing contentions.

34.     Based on Harris' filing of this suit and Teledyne's Affirmative Defenses, a true, actual, and justiciable controversy has arisen and now exists between Teledyne and Harris regarding the alleged infringement and validity of the '319 patent asserted by Harris against Teledyne.

35.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Teledyne requests the declaration of the Court that Teledyne does not infringe and has not infringed any valid, enforceable claim of the '319 patent and/or the '319 patent is invalid.

36.     Teledyne has no adequate remedy at law.

## FIFTH COUNTERCLAIM

## (Declaratory Judgment of Non-Infringement and/or Invalidity of the '387 Patent)

37.     Teledyne restates and incorporates by reference each of the allegations of paragraphs 1 through 8 of this Counterclaim.

38.     On February 3, 2011, Harris filed a complaint against Teledyne, designated as Civil Action No. 6:11-cv-182-Orl-28GJK, alleging that Teledyne has utilized and continues to utilize systems that infringe directly, by inducement and/or contributorily, one or more claims of the '387 patent.

39.     Each claim of the '387 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto; and/or Teledyne has not infringed and is not now infringing any valid and enforceable claim of the '387 patent, either directly, contributorily or through inducement, literally or by equivalents, and, moreover, Teledyne, its customers, and all others have the right to manufacture, have made, use, sell, offer to sell any Teledyne products and services accused of infringement, unhampered and unmolested by Harris.

40.     Teledyne is informed and believes, and on that basis alleges, that Harris denies each of the foregoing contentions.

41.     Based on Harris' filing of this suit and Teledyne's Affirmative Defenses, a true, actual, and justiciable controversy has arisen and now exists between Teledyne and Harris regarding the alleged infringement and validity of the '387 patent asserted by Harris against Teledyne.

42.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Teledyne requests the declaration of the Court that Teledyne does not infringe and has not infringed any valid, enforceable claim of the '387 patent and/or the '387 patent is invalid.

43.     Teledyne has no adequate remedy at law.

## SIXTH COUNTERCLAIM

## (Declaratory Judgment of Non-Infringement and/or Invalidity of the '388 Patent)

44.     Teledyne restates and incorporates by reference each of the allegations of paragraphs 1 through 8 of this Counterclaim.

45.     On February 3, 2011, Harris filed a complaint against Teledyne, designated as Civil Action No. 6:11-cv-182-Orl-28GJK, alleging that Teledyne has utilized and continues to utilize systems or methods that infringe directly, by inducement and/or contributorily, one or more claims of the '388 patent.

46.     Each claim of the '388 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto; and/or Teledyne has not infringed and is not now infringing any valid and enforceable claim of the '388 patent, either directly, contributorily or through inducement, literally or by equivalents, and, moreover, Teledyne, its customers, and all others have the right to manufacture, have made, use, sell, offer to sell any Teledyne products and services accused of infringement, unhampered and unmolested by Harris.

47.     Teledyne is informed and believes, and on that basis alleges, that Harris denies each of the foregoing contentions.

48.     Based on Harris' filing of this suit and Teledyne's Affirmative Defenses, a true,

actual, and justiciable controversy has arisen and now exists between Teledyne and Harris

regarding the alleged infringement and validity of the '388 patent asserted by Harris against

Teledyne.

49.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.,

Teledyne requests the declaration of the Court that Teledyne does not infringe and has not

infringed any valid, enforceable claim of the '388 patent and/or the '388 patent is invalid.

50.     Teledyne has no adequate remedy at law.

## SEVENTH COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement and/or Invalidity of the '412 Patent)

51.     Teledyne restates and incorporates by reference each of the allegations of

paragraphs 1 through 8 of this Counterclaim.

52.     On February 3, 2011, Harris filed a complaint against Teledyne, designated as

Civil Action No. 6:11-cv-182-Orl-28GJK, alleging that Teledyne has utilized and continues to

utilize systems or methods that infringe directly, by inducement and/or contributorily, one or

more claims of the '412 patent.

53.     Each claim of the '412 Patent is invalid for failure to comply with one or more of

the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101,

102, 103, and 112, and the rules, regulations, and laws pertaining thereto; and/or Teledyne has

not infringed and is not now infringing any valid and enforceable claim of the '412 patent, either

directly, contributorily or through inducement, literally or by equivalents, and, moreover,

Teledyne, its customers, and all others have the right to manufacture, have made, use, sell, offer

to sell any Teledyne products and services accused of infringement, unhampered and unmolested by Harris.

54.     Teledyne is informed and believes, and on that basis alleges, that Harris denies each of the foregoing contentions.

55.     Based on Harris' filing of this suit and Teledyne's Affirmative Defenses, a true, actual, and justiciable controversy has arisen and now exists between Teledyne and Harris regarding the alleged infringement and validity of the '412 patent asserted by Harris against Teledyne.

56.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Teledyne requests the declaration of the Court that Teledyne does not infringe and has not infringed any valid, enforceable claim of the '412 patent and/or the '412 patent is invalid.

57.     Teledyne has no adequate remedy at law.

## EIGHTH COUNTERCLAIM

### (Declaratory Judgment of Unenforceability due to Inequitable Conduct)

58.     Teledyne restates and incorporates by reference each of the allegations of paragraphs 1 through 8 of this Counterclaim.

59.     The '165 patent and the patents claiming priority to it are unenforceable and void due to inequitable conduct that occurred during the reexamination of the '165 patent.

60.     Teledyne incorporates by reference as if fully stated herein Paragraphs 58 - 70, *supra*, of its Answer.

61.     An actual controversy exists between the Teledyne and Harris with respect to the enforceability of the '165 patent and the patents claiming priority to it.  Teledyne therefore seeks a declaration that the '165 patent and the patents claiming priority to it are unenforceable.

62.     Teledyne has no adequate remedy at law.

63.     Teledyne reserves the right to supplement and amend its inequitable conduct defense in the event that it obtains additional information material to the unenforceability of the '165 patent and the patents claiming priority to it.

## NINTH COUNTERCLAIM

### (Declaratory Judgment of Unenforceability due to Prosecution Laches)

64.     The '387, '388 and '412 patents are unenforceable due to prosecution laches.

65.     Harris filed the application that led to the parent '165 patent on November 14, 1995.  In that application Harris disclosed a system for recording flight performance data on an aircraft and transmitting that data, via a wireless ground data link, from the aircraft to an airport based transceiver, from which the data would be sent to a processor for analysis.  Harris specifically disclosed that the "wireless ground data link is implemented as a spread spectrum RF link" (2:31-32), explaining that "[i]n accordance with the present invention the spread spectrum transmitter and receiver components have two particularly useful characteristics. The first is their operation in the 2.4-2.5 GHz unlicensed S-band . . . . The second is the use of direct sequence spread spectrum (DSSS) . . ." (14:32-42). *See also*, 4:31-32 ("Because the invention operates in an unlicensed portion of the electromagnetic spectrum . . . ."); 12:60-62 ("As noted previously, since the wireless ground data link system of the present invention operates in an unlicensed portion of the EM frequency spectrum . . . .");13:34-35 ("For this purpose, the spread spectrum transceiver of the present invention . . .").

66.     The '165 patent issued on April 4, 2000, with claims expressly limited to a system using the disclosed wideband spread spectrum communications signals, which operated in an

unlicensed frequency band.  Harris made no attempt to obtain claims covering cellular

applications, which operate in a licensed frequency band.

     67.    Harris confirmed the intended reach of its patents by obtaining a series of

continuation patents, each one similarly limited to a wireless ground data link using a wideband

spread spectrum communications signal but none disclosing or claiming an embodiment that

could include a GSM cellular-based system:

| Patent | Filing Date | Issue Date | All Claims Limited to |
|---|---|---|---|
| 6,104,914 | Feb 17, 1999 | Aug 15, 2000 | "a wideband spread spectrum communication signal" |
| 6,108,523 | Feb 17, 1999 | Aug 22, 2000 | "a wideband spread spectrum communication signal that comprises a signal in the range of about 2.4 to about 2.5 GHz" |
| 6,154,637 | June 2, 1999 | Nov 28, 2000 | "a spread spectrum communication signal" |
| 6,308,045 | Nov 16, 2000 | Oct 23, 2001 | "a frequency hopping spread spectrum communication signal" or "a direct sequence spread spectrum communication signal" |
| 6,990,319 | Feb 7, 2003 | Jan 24, 2006 | "a wideband spread spectrum communications signal" |

     68.    Not until September 2008, nearly thirteen years after filing its initial application,

did Harris obtain claims that did not expressly limit the signal used for the wireless ground data

link to a "spread spectrum communications signal."  These claims were included in the '387,

'388 and '412 patents-in-suite, which Harris now seeks to read on Teledyne's patented system,

which uses licensed cellular signals not unlicensed spread spectrum signals.

69.     On January 30, 2001, after considering the Harris parent '165 patent, the Patent

Office issued Teledyne's '990 patent covering its Wireless GroundLink ("WGL") system, which

is accused by Harris in this case.  Harris was aware of Teledyne's WGL system and the fact that

it had been patented as early as October 2001, when it sent a letter to Teledyne offering it a

license to the Harris patents for the WGL system and recognizing that the Teledyne '990 patent

had been issued over the Harris parent '165 patent.  By March 2003, Harris was aware that a key

point of distinction between its then-issued patents and the WGL system was that the WGL

system used GSM cellular technology, which did not employ any of the unlicensed wideband

spread spectrum communication signals claimed in the Harris patents.  In April 2003, Harris

acknowledged in writing that without Court intervention the parties could not agree on the proper

interpretation of Harris' patent claims.  In November 2006, eleven years after it filed its first

patent application, Harris sought to eliminate this key distinction by filing three new continuation

patents, each with claims that, on their face, appeared much broader than anything that had

previously been patented.  These claims, which issued in September 2008 in the '387, '388 and

'412 patents, were not *expressly* limited to using the unlicensed wideband spread spectrum

communications signal disclosed in the specification as a key element of the invention, but,

instead, purported to cover a system that used any "wireless RF [radio frequency]

communication signal," including some claims directed at using "cellular" signals.

70.     The '387, '388 and '412 patents issued nearly thirteen years after Harris filed the

application that led to the original '165 patent; more than ten years after Teledyne filed its

application for the '990 patent; and many years after Teledyne's GSM cellular-based WGL

system came on the market.  To the extent that the common specification entitles Harris to the

claims of the '387, '388 and '412 patents, Harris could have sought those claims years earlier,

but for an unexplained and unexplainable reason, elected not to do so.  Rather, year after year,
Harris filed patent applications directed to the system it allegedly invented, a system limited to
using wideband spread spectrum communication signals; leading the industry to the
unmistakable conclusion that the invention Harris intended to claim included these limitations.
During that time Teledyne, confident that its WGL system was not covered by what Harris had
disclosed as its invention, invested heavily in its WGL system.

71.    Harris waited until Teledyne had made its investments and established its WGL
business before seeking claims intended to broaden the scope of its patents and capture from
Teledyne that which Teledyne had rightfully believed was outside the scope of the Harris
patents.  Even after learning that Teledyne believed a key distinguishing feature of its WGL
system was its exclusive use of non-spread spectrum GSM technology, Harris waited over three
and a half years, while Teledyne continued to invest in and build its WGL business, before
applying for the claims that issued in the '387, '388 and '412 patents, claims that Harris
apparently believes overcome that distinction.   Harris' unreasonable and unexplained thirteen-
year delay in obtaining the claims of the '387, '388 and '412 patents has prejudiced Teledyne,
who, through its WGL system, has obtained intervening rights to the technology claimed in those
patents.  As a result, the '387, 388 and '412 patents are unenforceable due to prosecution laches.

72.    A substantial, immediate and real controversy exists between the parties as to the
enforceability of the '387, 388 and '412 patents.  Teledyne seeks a declaration that these patents
are unenforceable due to prosecution laches.

73.    Teledyne has no adequate remedy at law.

74.     Teledyne reserves the right to supplement and amend its prosecution laches defense in the event that it obtains additional information material to the unenforceability of the '387, '388 and '412 patents.

## PRAYER FOR RELIEF

WHEREFORE, Teledyne prays for judgment as follows:

A.     that the Court find and declare that the '165 Patent is invalid and/or is not and has not been infringed by Teledyne or any of its customers using its products;

B.     that the Court find and declare that the '045 Patent is invalid and/or is not and has not been infringed by Teledyne or any of its customers using its products;

C.     that the Court find and declare that the '479 Patent is invalid and/or is not and has not been infringed by Teledyne or any of its customers using its products;

D.     that the Court find and declare that the '319 Patent is invalid and/or is not and has not been infringed by Teledyne or any of its customers using its products;

E.     that the Court find and declare that the '387 Patent is invalid and/or is not and has not been infringed by Teledyne or any of its customers using its products;

F.     that the Court find and declare that the '388 Patent is invalid and/or is not and has not been infringed by Teledyne or any of its customers using its products;

G.     that the Court find and declare that the '412 Patent is invalid and/or is not and has not been infringed by Teledyne or any of its customers using its products;

H.     that the court find and declare that the '165 patent and the patents claiming priority to it are unenforceable due to inequitable conduct;

I.     that the court find and declare that the '387, '388 and '412 patents are unenforceable due to prosecution laches;

J.     that the Court find this an exceptional case and awards Teledyne its costs and attorneys' fees pursuant to 35 U.S.C. § 285 or otherwise; and

       K.     that the Court grant Teledyne such other and further relief as the Court deems just and proper.

## JURY TRIAL REQUEST

       Teledyne requests a trial by jury as to all matters so triable.

**Dated:**  August 11, 2011

                           Respectfully submitted,

                           /s/ *Bruce R. Zisser*
                           FREDERICK A. LORIG
                           California Bar Number 057645
                           Appearing *Pro Hac Vice*
                           BRUCE R. ZISSER
                           California Bar Number 180607
                           Appearing *Pro Hac Vice*
                           Quinn Emanuel Urquhart & Sullivan, LLP
                           865 S. Figueroa Street, 10th Floor
                           Los Angeles, California, 90017
                           Telephone:    213.443.3000
                           Facsimile:    213.443.3100
                           Email: fredlorig@quinnemanuel.com
                           Email: brucezisser@quinnemanuel.com

                           CHARLES J. CACCIABEVE
                           Florida Bar Number 329908
                           JASON A. PERKINS
                           Florida Bar Number 0610852
                           CARLTON FIELDS, P.A.
                           P.O. Box 1171
                           Orlando Fl 32802-1171
                           Telephone:    407.849.0300
                           Facsimile:    407.648.9099
                           Email: ccacciabeve@carltonfields.com
                           Email: jperkins@carltonfields.com

                           Attorneys for Teledyne Technologies
                           Incorporated

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served via electronic mail through the CM/ECF system to Henry C. Bunsow; Brian A.E. Smith; Denise De Mory; Brian R. Gilchrist and Ryan T. Santurri on Thursday, August 11, 2011.

/s/ *Bruce R. Zisser*
BRUCE R. ZISSER
California Bar Number 180607
Appearing *Pro Hac Vice*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California, 90017
Telephone:    213.443.3000
Facsimile:    213.443.3100
Email: brucezisser@quinnemanuel.com
Attorneys for Teledyne Technologies
Incorporated